UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BART SANGABRIEL TUBALINAL, JR. and YOLANDA T. TUBALINAL, | ) ) ) | |
| Plaintiffs, | ) ) | No. 11 C 04104 |
| v. | ) ) ) | Judge Edmond E. Chang |
| BAC HOME LOANS SERVICING, L.P. and BANK OF AMERICA, N.A., | ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Bart and Yolanda Tubalinal, who are litigating this case *pro se*, filed a fourth amended complaint against Defendants BAC Home Loans Servicing, L.P., and Bank of America, N.A., alleging various claims related to Plaintiffs' mortgage loan.[1] R. 39. Defendant Bank of America moves to dismiss the fourth amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] R. 48. For reasons explained more fully below, the motion to dismiss is granted. With one exception, the dismissal is with prejudice (meaning the claims cannot be refiled); as to the breach of contract

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the RESPA claim, and supplemental jurisdiction over the state-law claims under § 1367. Even if the RESPA claim is so insubstantial that it does not invoke federal jurisdiction, there is diversity jurisdiction over the case where the parties are diverse, *see* R. 58 (jurisdictional inquiry issued by the Court), R. 60, 62 (responses confirming diversity of citizenship; Plaintiffs are Illinois citizens, Defendant is a North Carolina citizen), and where it is possible that more than $75,000 is at stake (the amount of Plaintiffs' mortgage was over $100,000, and Plaintiffs claim other tort damages, such as emotional distress).

[2]Defendant Bank of America, N.A. is successor by merger to Defendant BAC Home Loans Servicing, L.P. *See* R. 48 (Def.'s Br.) at 9.

claim only, Plaintiffs may move for leave to file a fifth amended complaint in accordance with the Court's ruling below. If Plaintiffs do not so move by August 6, 2012, then the dismissal on the breach of contract will convert automatically to a dismissal with prejudice.

## I.

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations. In 2006, Bart and Yolanda Tubalinal obtained a mortgage loan from Countrywide Home Loans, which was later acquired by Defendant Bank of America. R. 39 (Am. Compl.) ¶¶ 3.01, 3.11. According to the mortgage note, Plaintiffs agreed to pay Countrywide (now Bank of America) $775.18 on the first day of each month beginning on December 1, 2006. *Id.* ¶ 3.06; R. 39-3, Pls.' Exh. B. After making the first two payments, Plaintiffs enrolled in an accelerated loan repayment program and their mortgage loan payments were automatically drafted each week from Plaintiffs' checking account. Am. Compl. ¶¶ 3.09-3.10.

The automatic weekly mortgage payments continued through March 19, 2010. *Id.* ¶ 3.12. Plaintiffs claim that Bank of America unilaterally cancelled the automatic payments without notice after it received Plaintiffs' application for a mortgage loan modification. *Id.* ¶ 3.17. No mortgage payments were made between March 26 and June 11, 2010. *Id.* ¶ 3.24. In June 2010, Plaintiffs discovered that the automatic weekly payments had ceased without their consent. *Id.* ¶ 3.17. Plaintiffs assumed that the payment stoppage was related to the loan modification application they submitted to Bank of America in March. *Id.* ¶ 3.18. In addition, a customer service representative

from Bank of America had advised Plaintiffs to comply with the loan modification "trial period." *Id.* ¶ 3.18. Pursuant to the trial period, Plaintiffs made several consecutive monthly payments of $781.50 between June 21 and November 10, 2010. *Id.* ¶¶ 3.18-3.19. Bank of America told Plaintiffs that *all* mortgage payments, including the trial period payments, would be applied to the amounts past due on their mortgage once the loan modification was approved. *Id.* ¶ 3.28. Therefore, Plaintiffs believed that they did not have to take action regarding the missed payments from March, April, May, and June 2010. *Id.*

Plaintiffs also believed that their participation in the accelerated loan repayment program meant that they were ahead on payments and, as a result, the mortgage could not be in default status. *Id.* Plaintiffs' accelerated weekly payments always resulted in a higher monthly payment than the $775.81 per month payment required by Plaintiffs' mortgage note. *Id.* ¶ 3.11. This belief, combined with their attempt to modify the loan, caused Plaintiffs to disregard a letter they received from Bank of America dated June 14, 2010 notifying Plaintiffs that their home loan was past due. *Id.* ¶ 3.28. Despite the missed payments, Plaintiffs did not believe that they were in default and they continued to wait for Bank of America to approve their loan modification.

In October 2010, Bank of America sent Plaintiffs another notice stating that "[a] loan in default status that is being considered for a loan modification remains in default status through the modification process until the loan is permanently modified." *Id.* ¶ 3.29; R. 41-1, Pls.' Exh. 5.02. Thus, Plaintiffs' mortgage could be

3

subject to fees unrelated to their loan modification. *Id.* In November, Bank of America again notified Plaintiffs that their loan was in serious default because the required payments had not been made. *Id.* ¶ 3.30; R. 41-2, Pls.' Exh. 5.03. Bank of America's letter set forth the amount owed by Plaintiffs and the process by which Plaintiffs could cure the default. *Id.* Again, Plaintiffs maintained their belief that they could not be in default due to their accelerated payments and participation in the loan modification process, and did not attempt to cure the default or take any action with respect to these notices. *Id.* ¶ 3.32.

Plaintiffs eventually learned that Bank of America denied their application for a loan modification due to lack of documentation. *Id.* ¶ 3.33. In late November 2010, Plaintiffs faxed additional documents to Bank of America and filed an online complaint with the Office of the Comptroller of the Currency. *Id.* Bank of America responded that, under the October 2006 mortgage note, accelerated payments made during the regular servicing of Plaintiffs' loan do *not* impede or prevent Bank of America's right to collect monthly payments on the loan. *See id.* ¶ 3.34; R. 42-4, Pls.' Exh. 5.10. Bank of America also defended its decision to cancel Plaintiffs' automatic weekly payments; specifically, Bank of America claimed that the drafts were discontinued because Plaintiffs entered into a new agreement (the trial modification program), which replaced their prior agreement with Bank of America to automatically debit the payments from Plaintiffs' checking account. Pls.' Exh. 5.10.

The parties continued to correspond about modifying the loan and, in January 2011, Bank of America approved Plaintiffs' application for a loan modification. Am.

Compl. ¶ 3.37. But because the modified loan principal included penalties and late charges assessed while the loan was in default, Plaintiffs refused to accept the loan modification as proposed by Bank of America. *Id.* ¶¶ 3.38-3.39. In February 2011, Bank of America initiated foreclosure proceedings, and this suit followed. *Id.* ¶ 3.41.

Plaintiffs' fourth amended complaint alleges ten claims against Bank of America: breach of contract, negligence, fraud, wrongful foreclosure, breach of the implied covenant of good faith and fair dealing, unjust enrichment, slander of title, injury to creditworthiness, intentional infliction of emotional distress, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601.[3]

## II.

Under the Federal Rules of Civil Procedure, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But only certain allegations—factual ones—count toward assessing whether a complaint states a plausible claim. A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2009)). Determining plausibility is a "context-specific task that

---

[3]With regard to the state-law claims, the Court applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Soo Line R.R. v. Escanaba & Lake Superior R.R.*, 840 F.2d 546, 552 (7th Cir. 1988). Under Illinois law, in cases involving real estate, the law of the state where the real estate is located controls. *Ehlers ex rel. Chief Indus., Inc. v. Frey*, 441 N.E.2d 651, 653 (Ill. App. Ct. 1982).

requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When ruling on a defendant's motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the plaintiff's factual allegations as true and draw reasonable inferences in the plaintiff's favor. *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010). Additionally, *pro se* complaints are to be liberally construed. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

## III.

### A.    Breach of Contract

Plaintiffs allege that Bank of America breached the parties' original mortgage agreement by initiating foreclosure proceedings when Plaintiffs' account was not in default. Am. Compl. ¶¶ 3.64-3.69. Although Plaintiffs attached a copy of the mortgage note to their complaint, they do not identify the specific provision(s) that Bank of America allegedly breached. *See* R. 39-3, Pls.' Exh. B.

Bank of America argues that Plaintiffs' failure to make monthly loan payments in April and May of 2010, or at least after November 2010, caused them to be in default on their mortgage loan. Def.'s Br. at 4-5. As Bank of America points out, Plaintiffs' participation in the accelerated loan repayment program did not relieve Plaintiffs of their obligation to continue making their scheduled monthly payments under the mortgage note. Def.'s Br. at 5. The note provides that although Plaintiffs have the right to make payments of principal at any time before they are due, such "prepayments" do not change "the due date or . . . amount of [Plaintiffs'] monthly payment unless the

6

Note Holder agrees in writing to those changes." *Id.* (quoting Pls.' Exh. B § 4). Moreover, the mortgage agreement does not specifically address either Plaintiffs' enrollment in the accelerated repayment program or their assent to Bank of America's automatic weekly withdrawals. Thus, Bank of America cannot be said to have breached the agreement by cancelling the automatic payments without notifying Plaintiffs. In short, Plaintiffs fail to allege facts that, if true, state a claim that Bank of America breached the original mortgage agreement.

In March 2010, however, Plaintiffs applied for a loan modification and began making payments as part of the loan modification "trial period." Am. Compl. ¶¶ 3.17-3.18. With regard to this modification, Plaintiffs' breach of contract claim alleges that Bank of America (1) "mishandl[ed] Plaintiffs' loan modification application process[,] causing undue delay and denial of the loan modification and wrongfully incurring penalties and late charges," and (2) "negligently and careless[ly] misle[d] plaintiffs into paying the trial amount and result[ed] in Defendant's wrongful declaration of default." *Id.* ¶ 3.67. Plaintiffs allege facts showing that the amount and time of their mortgage payments changed upon enrolling in the trial period. *See id.* ¶¶ 3.17-3.18. And documents attached to Plaintiffs' fourth amended complaint show that Bank of America, too, viewed the modification as a "new agreement."[4] *See* R. 42-4 at 2. For instance, a December 2010 letter from a Bank of America customer service employee

---

[4]"In deciding a Rule 12(b)(6) motion, the court may also consider documents attached to the pleading without converting the motion into one for summary judgment." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c)).

states that Bank of America discontinued Plaintiffs' weekly automatic drafted payments when Plaintiffs began their loan modification trial plan. R. 42-4 at 2. According to this letter, Plaintiffs' "prior agreement with Bank of America to deduct [their] monthly mortgage payments was no longer a valid agreement upon [their] entering into a *new agreement* with Bank of America, specifically the trial modification program, which consisted of a new modified monthly payment which is not a full monthly payment." *Id.* (emphasis added).

Viewing all of these facts in the light most favorable to Plaintiffs, and construing the complaint broadly, Plaintiffs seek to hold Bank of America liable for breaching the trial *modification* agreement, as distinct from the *original* mortgage. In their response brief, Plaintiffs argue that they ultimately rejected the permanent loan modification offered by Bank of America "for the simple reason that the offered loan modification would include a capitalized claim for 'unpaid delinquencies, late payment penalties and accrued interests.'" R. 51 (Pls.' Resp.) at 19-20. Plaintiffs mention a Fannie Mae loan modification program, *id.*, but it is not clear from the complaint what the terms of the proposed modification were and what promises (if any) Bank of America made to Plaintiffs in the trial modification agreement. For instance, although Count 2 of Plaintiffs' fourth amended complaint labeled "fraud" alleges that Bank of America "promis[ed] Plaintiffs that payment of the trial amortization amount during the loan modification process would not cause or create a delinquency, late charges, fees and/or penalties," Plaintiffs do not allege—and this is crucial—that this promise was part of

any valid contract upon which a breach of contract claim must be premised.[5] *See* Am. Compl. ¶ 3.55(a).

Although the current complaint does not contain that crucial allegation, it is possible that Plaintiffs could offer an amended complaint that does. A recent Seventh Circuit case supports the viability of a trial mortgage modification agreement as the premise of a breach of contract claim. In *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 558 (7th Cir. 2012), the plaintiff alleged that Wells Fargo erroneously denied her permanent mortgage loan modification after she complied with all terms under the parties' trial period agreement. The Seventh Circuit held that the plaintiff's allegations stated a claim for breach of contract under Illinois law.[6] *Wigod*, 673 F.3d at 561. Similarly, in this case, Plaintiffs allege that they made all of the required payments during the modification trial period but that, at the end of the trial period, Bank of America offered them a modification with a higher loan principal that, according to Plaintiffs, wrongfully included delinquencies, penalties, and late charges. Am. Compl. ¶¶ 3.19, 3.38-3.39. Plaintiffs seem to contend that the permanent modification offered

---

[5]Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding. *See In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012); *see also Cole v. Bank of America, N.A.*, 2012 WL 465190, at *2 (S.D. Tex. Feb. 13, 2012) (breach of contract claim dismissed because plaintiff alleged "only that the parties engaged in negotiations, not that there was a specific offer and the acceptance of that offer to form a contract for a loan modification").

[6]As in Illinois, the elements of breach of contract under Texas law are: "(1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of that breach." *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App. 2008).

by Bank of America was subject to unfavorable terms that Plaintiffs were unaware of when they agreed to the trial modification—*e.g.*, a later maturity date and higher principal amount. *Id.* ¶ 3.39.[7] But more facts are needed for Plaintiffs to sufficiently allege that Bank of America breached the trial modification agreement (as distinct from Plaintiffs simply being unaware of what the permanent modification would include). Specifically, Plaintiffs' fourth amended complaint does not sufficiently allege what Bank of America promised would be the terms of the permanent modification upon satisfactory completion of the trial. But because Plaintiffs are acting *pro se*, and have come close to stating a breach of contract claim, Plaintiffs are granted leave to propose a fifth amended complaint to allege additional facts about how Bank of America allegedly breached the trial modification agreement, which appears to have replaced (at least accepting the complaint as true) the original mortgage agreement in March 2010.

In the event Plaintiffs choose to re-plead their breach of contract claim, they should attach any relevant written documents to the fifth amended complaint. Plaintiffs should also consider the possibility of relief should their potential breach of contract claim proceed beyond the motion to dismiss stage. In other words, what would Plaintiffs want if Bank of America is ultimately found liable for breaching the trial modification agreement in March 2010, before the missed payments? If the property

---

[7]*See also* R. 42-5, Pls.' Exh. 5.11 (B. Tubalinal letter dated 12/17/10: ". . . . this loan modification application [] put us in a bind. Instead of being helped, it has become an instrument of financial institutions to manipulate unsuspecting and ignorant victims.").

has not been foreclosed and sold, then perhaps one form of relief would be to cease the foreclosure proceedings and return the home to Plaintiffs with modified loan payments. But it appears that Plaintiffs have moved from Texas, and it is not clear if Plaintiffs have the current financial means to pay the modified loan payments. If reinstatement of the modified loan is not what Plaintiffs want, then they must consider what other form of relief they want—and what is permissible under the law. It might very well be the case that only limited compensatory damages are available. In any event, Plaintiffs should consider the relief available to them when deciding whether and how they propose to amend their complaint.

### B.    Negligence

In Texas, "[t]he contractual relationship of the parties may create duties under both tort and contract law, and, depending upon the circumstances, a party's conduct may breach duties in tort or contract alone or simultaneously in both." *Castle Tex. Prod. Ltd. P'ship v. Long Trusts*, 134 S.W.3d 267, 274 (Tex. App. 2003). Under Texas's "independent injury rule," "if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may sound in both tort and contract, but if the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 126-27 (Tex. App. 2006) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)); *OXY USA, Inc. v. Cook*, 127 S.W.3d 16, 20 (Tex. App. 2003) ("If the action depends entirely on pleading and proving the contract in order to establish

11

a duty, the action remains one for breach of contract only, regardless of how it is framed by the pleadings.").

Bank of America argues that Plaintiffs cannot bring a negligence claim because the parties' mortgage agreement, and not common law negligence, governs their dispute. Def.'s Br. at 2-3. Indeed, the mortgage agreement spells out the respective rights of the parties in this case. *See, e.g., DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 103, 105 (Tex. 1999) (where easement contract spelled out respective rights, the contract governed the dispute over those rights). And Plaintiffs' claims are all based on the subject matter of the mortgage agreement (and/or potentially the other modified agreement as discussed above). *See, e.g., Exxon Mobil*, 192 S.W.3d at 128 (citing *DeWitt Cnty. Elec. Coop.*, 1 S.W.3d at 105); *Hansberger v. EMC Mortg. Corp.*, 2009 WL 2264996, at *3-4 (Tex. App. 2009). Plaintiffs' claims sound in contract; Plaintiffs do not allege that Bank of America breached a duty imposed by law rather than by the contract. Accordingly, Bank of America's motion to dismiss Count 1 is granted.

## C. Implied Covenant of Good Faith and Fair Dealing

The Texas Supreme Court "has declined to impose an implied duty of good faith and fair dealing in every contract, though it has recognized that such a duty may arise as a result of 'a special relationship between the parties governed or created by a contract.'" *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App. 2005) (citations omitted). "[A]bsent a 'special relationship,' any duty to act in good faith is contractual in nature and its breach does not amount to an independent

12

tort." *Id.* (finding no special relationship to support duty of good faith and fair dealing between borrower and lender).

Plaintiffs do not allege factual allegations supporting an inference that a "special relationship" existed between them and Bank of America. And Texas courts "have found no special relationship between a mortgagor and a mortgagee . . . that would impose an independent common law duty of good faith and fair dealing." *Id.*; *see also Cole*, 2012 WL 465190, at *2. Accordingly, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count 5) is dismissed.

### D. Fraud

In Texas, the elements of fraud are "(1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citation omitted). Fraud claims must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b). *Id.* at 1033.

Plaintiffs allege that Bank of America "engaged in a pattern and practice of defrauding Plaintiffs during the life of the mortgage loan." Am. Compl. ¶ 3.55. Plaintiffs then list seven subparagraphs containing alleged "misrepresentations of material fact." *Id.* Bank of America argues that Plaintiffs' fraud claim must be

13

dismissed because Plaintiffs do not provide "any details as *to when, where, how and by specifically whom* those misrepresentations were made." Def.'s Reply at 3 (emphasis in original).

For example, Plaintiffs allege that "Defendants" committed fraud by "misrepresenting a proposed loan modification with unacceptable terms due to the [sic] misapplications of delinquencies, late charges, fees, when defendants had no reasonable ground for believing that [sic] such delinquencies, late charges, fees and penalties were appropriate since Plaintiffs repeatedly provided written and verbal explanations and proof of payments to Defendants." Am. Compl. ¶ 3.55(d). In the facts section of the fourth amended complaint, Plaintiffs allege that in January 2011 Marina Martinez, a Workout Negotiator at Bank of America, offered Plaintiffs a loan modification with a principal amount which included delinquencies, penalties, and late charges. *Id.* ¶ 3.39. Plaintiffs allege that Martinez did not disclose this information to them; instead, Plaintiffs only learned of the higher principal amount upon asking about it during a phone conversation with Martinez. *Id.* ¶ 3.38; *see also* R. 42-1, Pls.' Exh. 5.07. Plaintiffs' fourth amended complaint, read as a whole, identifies the who, when and how regarding this particular statement, however, Plaintiffs fail to allege that they relied on Martinez's statement to their detriment.

Plaintiffs' allegations regarding the other statements listed in their complaint also fall short of stating a claim for fraud. Plaintiffs allege that Bank of America promised Plaintiffs that they would not incur any late charges or fees so long as they continued to make trial payments during the loan modification process. Am. Compl.

¶ 3.55(a). First, Plaintiffs do not allege when, where, or by whom this allegedly fraudulent statement was made. *See Flaherty & Crumrine Preferred Income Fund, Inc. v. TXI Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (stating that Rule 9(b) requires the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent). Second, this alleged statement is contradicted by exhibits attached to Plaintiffs' fourth amended complaint showing that Bank of America notified Plaintiffs that they *could* incur fees on default loans, even during the loan modification process. *See, e.g.*, R. 41-1, Pls.' Exh. 5.02.

In short, Plaintiffs' allegations fail to meet the pleading requirements of Rule 9(b) as to several of the fraud elements. Bank of America's motion to dismiss Count 2 for failure to sufficiently plead fraud is granted.

### E. Wrongful Foreclosure

Under Texas law, a plaintiff asserting wrongful foreclosure must allege (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between a defect and the grossly inadequate selling price. *See Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. 2008). Plaintiffs do not allege that a foreclosure sale occurred on the subject property or that the property was sold at an inadequate price. Therefore, Plaintiffs' wrongful foreclosure claim (Count 3) must be dismissed.

### F. Unjust Enrichment

As already discussed, the mortgage agreement covers the subject matter of the parties' dispute in this case. *See supra* at 11-12. Bank of America argues that the existence of an express agreement precludes recovery for unjust enrichment. Def.'s Br. at 6-7. Indeed, "[u]njust enrichment claims are based on quasi-contract and are predicated on the absence of an express contract controlling the circumstances." *First Union Nat'l Bank v. Richmond Capital Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App. 2005); *see also Garrett v. PNC Mortg. Co.*, 2012 WL 1835864, at *4 (N.D. Tex. Apr. 16, 2012) ("Under Texas law, there can be no unjust enrichment claim when there is a binding contract between the parties."). Plaintiffs' contract with Bank of America precludes a cause of action for unjust enrichment. Bank of America's motion to dismiss the unjust enrichment claim (Count 6) is granted.

## G. Slander of Title

"Slander of title is defined as a false and malicious statement made in disparagement of a person's title to property which causes him special damage." *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 109 (Tex. App. 1997). To prove slander of title under Texas law, a party must establish: "(1) the uttering and publishing of the disparaging words; (2) that they were false; (3) that they were malicious; (4) that the plaintiff sustained special damages thereby; and (5) that the plaintiff possessed an estate or interest in the property disparaged." *Id.* at 110.

Bank of America argues that Plaintiffs fail to plead the fourth element—special damages—with the specificity required by Federal Rule of Civil Procedure 9(g). Def.'s Br. at 7; *see Duncan Land & Exploration, Inc. v. Littlepage*, 984 S.W.2d 318, 333 (Tex.

App. 1998) ("Special damages are those damages that proximately, naturally, and reasonably result from the alleged slander."); *Kiggundu v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 2606359, at *7 (S.D. Tex. June 30, 2011). The Bank is correct. Plaintiffs allege a conclusion—that they have suffered "special damages"—but the fourth amended complaint does not set forth any facts about what those special damages are. Plaintiffs do not address the issue of special damages (or the slander of title claim, generally) in their response brief. Count 7 is dismissed.

### H.    Intentional Infliction of Emotional Distress

Under Texas law, a claim for intentional infliction of emotional distress must allege that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). The extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quotations and citation omitted); *see also Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001) (mere fact that conduct is tortious or otherwise wrongful is not sufficient alone to render it "extreme and outrageous").

Plaintiffs allege that Bank of America's threat of foreclosure forced Plaintiffs to quickly sell or dispose of all of the personal belongings that were inside of the subject property. Am. Compl. ¶¶ 3.44, 3.91. Plaintiffs were forced to immediately abandon the home in which they hoped to live after their retirement. *Id.* ¶ 3.44; Pls.' Resp. at 5.

17

Plaintiffs also allege that Bank of America called them three to four times per day to harass them about the default status of their mortgage. Am. Compl. ¶ 3.45. Plaintiffs claim that Bank of America's actions caused them severe stress and mental and emotional anguish. *Id.* ¶ 3.91.

Bank of America argues that Plaintiffs' claim for intentional infliction of emotional distress fails as a matter of law because routine foreclosures—even if initiated wrongfully or in error—categorically do not rise to the level of "extreme and outrageous conduct" under Texas law. Def.'s Br. at 8-9. Bank of America cites to multiple federal district court cases dismissing intentional infliction of emotional distress claims because the defendants' alleged actions during foreclosure proceedings did not constitute extreme and outrageous conduct under Texas law. *See id.* In *Robinson v. BAC Home Loan Servicing, LP*, 2011 WL 2490601, at *5-6 (S.D. Tex. June 21, 2011), the plaintiff alleged that she received a letter from the defendant's attorney stating that it had commenced a foreclosure action against the plaintiff's home, and, later, the home was sold at public auction. *Id.* at *1. The court held that those allegations alone did not state a claim for intentional infliction of emotional distress, and dismissed the plaintiff's claim without prejudice. *Id.* at *6. In *Lopez v. Countrywide Mortgage*, 2008 WL 4682040, at *6-7 (S.D. Tex. Oct. 20, 2008), the plaintiff alleged that the defendants filed false documents of title and manipulated documents to gain a litigation advantage. In an alternative holding, the court concluded that this alleged conduct could not reasonably be construed as extreme or outrageous under Texas law. *Id.* at *7; *see also Kaposta v. Chase Home Fin. LLC*, 2012 WL 423377, at *2 (S.D. Tex.

18

Feb. 8, 2012) (allegations that defendant failed to notify plaintiff that it acquired the rights to his mortgage, sent correspondence to plaintiff, and sent employee to plaintiff's home not extreme and outrageous conduct); *Setzer v. Richards*, 2012 WL 32943, at *7-8 (W.D. Tex. Jan. 5, 2012) (dismissing intentional infliction of emotional distress claim when plaintiffs alleged that defendants foreclosed on the property after providing notice, and plaintiffs did not allege that they had complied with their mortgage obligations).

Plaintiffs in this case also fail to allege facts demonstrating that Bank of America's conduct was extreme and outrageous. Although Plaintiffs dispute whether their failure to pay the monthly mortgage payments in 2010 rendered the mortgage in default, they admit that no payments were made during that time period. Bank of America's attempts to communicate with Plaintiffs about the defaulted loan and foreclosure proceedings via letters and phone calls were not "so outrageous in character or extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Elliott v. Methodist Hosp.*, 54 S.W.3d 789, 796-97 (Tex. App. 2001). Plaintiffs were well aware that Bank of America intended to proceed with the foreclosure and the fact that Plaintiffs subjectively believed the foreclosure to be improper does not render Bank of America's conduct in implementing the foreclosure sufficiently extreme and outrageous to result in liability.

Accordingly, Plaintiffs fail to state a claim for intentional infliction of emotional distress. Count 9 is dismissed.

## I.     RESPA

Plaintiffs also claim that Bank of America violated the Real Estate Settlement Procedures Act, or RESPA, in Count 1 of their complaint. Am. Compl. ¶ 3.50. Plaintiffs do not cite specific sections of RESPA, but they appear to claim that the law was violated by Bank of America's failure "to maintain proper and accurate loan records . . . including, but not limited to: accurate crediting of payments made by Plaintiffs, accurate assessment of delinquencies, charges, fees, and penalties." *Id.*

Plaintiffs' RESPA claim fails, however, because RESPA does not provide a private cause of action for the alleged violations. "RESPA is a consumer protection statute that regulates the real estate settlement process . . . [and] imposes a number of duties on lenders and loan servicers." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011); *see also Mercado v. Calumet Fed. Sav. & Loan Ass'n*, 763 F.2d 269, 271 (7th Cir. 1985). To be sure, "RESPA is a broad statute," *Mercado*, 763 F.2d at 271, but it does not cover Bank of America's alleged failure "to maintain proper and accurate loan records." Rather, many of RESPA's provisions focus on the mortgage closing process, which, in this case, occurred in 2006.[8]

---

[8]RESPA defines "settlement services" as "any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement." 12 U.S.C. § 2602(3).

Although Plaintiffs do not specifically identify the provision(s) of the statute under which they seek relief, Plaintiffs' complaint alleges that Plaintiffs received a letter from Bank of America dated May 5, 2011. Am. Compl. ¶ 3.47. Plaintiffs allege that this letter stated that Bank of America would be treating Plaintiffs' April 28 correspondence "as a Qualified Written Request under RESPA, Section 6(e) and would respond to it within 60 days of its receipt." *Id.*

RESPA requires that loan servicers respond promptly to borrowers' "qualified written requests" for information. 12 U.S.C. § 2605(e). "The statute defines a qualified written request as written correspondence (other than notices on a payment coupon or similar documents) from the borrower or her agent that requests information or states reasons for the borrower's belief that the account is in error." *Catalan*, 629 F.3d at 680 (citing § 2605(e)(1)(B)). Here, it is evident that Plaintiffs believed that Bank of America erroneously placed their account in default status. But Plaintiffs do not allege that Bank of America violated RESPA by failing to take action within 60 days after receiving Plaintiffs' qualified written request. Plaintiffs conclusory allegation that Bank of America violated its "statutory duties" under RESPA is too vague to give Bank of America "fair notice of . . . the grounds upon which [Plaintiffs' RESPA claim] rests." *Twombly*, 550 U.S. at 555. Accordingly, Plaintiffs' RESPA claim is dismissed.

## J.    Injury to Creditworthiness

Finally, Plaintiffs' claim for injury to their creditworthiness (Count 8) is dismissed because it is not a cognizable cause of action. Plaintiffs' response brief does not cite any legal authority to suggest that this claim exists under Texas law.

21

## IV.

For the reasons stated above, Bank of America's motion to dismiss Counts 1, 2, 3, 5, 6, 7, 8, and 9 [R. 48] is granted with prejudice. The breach of contract claim, Count 4, is dismissed without prejudice. Because Plaintiffs' *pro se* fourth amended complaint alleges some facts about a loan modification agreement, the Court will give them an opportunity to file a motion for leave to file a fifth amended complaint for breach of contract (the motion must attach the proposed complaint). They have until August 6, 2012 to do so. If Plaintiffs do not file a motion by that date, then the dismissal will convert to a dismissal with prejudice. To track the case, a status hearing is set for August 22, 2012, at 9:15 a.m.

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

DATE: July 18, 2012